IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
RICHLAND DIVISION

| | |
|---|---|
| Ms. Denise N. Jones<br>　　　Plaintiff,<br><br>　　v.<br><br><br>South Carolina Department of Juvenile Justice, Erica R. Oliver-Worker's Compensation Manager (in her official capacity), and Ernest Brown- Associate Deputy of Clinical Services (in his official capacity.<br><br>　　　Defendants. | Case No.:<br><br>**COMPLAINT**<br>Jury Trial Requested |

Introduction

Ms. Denise N. Jones, by and through her undersigned counsel, brings the following Causes of Action against Defendants in violation of The Americans with Disabilities Act of 1990 and HIPAA. The Plaintiff asserts claims of Retaliation, Breach of Contract, Gross Negligence, and Negligent Conduct against Defendants South Carolina Department of Juvenile Justice, Erica R. Oliver-Worker's Compensation Manager, in her official capacity, and Ernest Brown-Associate Deputy of Clinical Services, in his official capacity based on the following allegations.

ADMINISTRATIVE CHARGE

Plaintiff has exhausted all administrative remedies and prerequisites prior to filing this lawsuit, including timeliness, deferral, and all other jurisdictional requirements necessary for the maintenance of this Action, as described below:

JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 28 U.S.C. Sections 1331 and 1343, 28 C.F.R part 36, 42 U.S.C.A Section 12101 and Section 12182, this being a proceeding to enforce rights and remedies secured under 28 C.F.R. part 36, 42 U.S.C. Section 12101 and Section 12182, (Title I and Title II of The Americans with Disabilities Act of 1990) and other Federal statutes. This Court also has pendant ancillary and supplementary jurisdiction over so much of this action as it is based on State law.

2. Venue is proper in the Richland Division because the Causes of Action arose therein, the acts and practices complained of occurred there, and it is where Defendant does business and may be found.

## PARTIES

3. Plaintiff Denise N. Jones is a citizen of the State of South Carolina and resides in Richland County.

4. Defendant, South Carolina Department of Juvenile Justice, is a S.C. State Agency that is formed and administered under the laws of South Carolina headquartered in Richland, County, South Carolina.

## FACTS

5. Plaintiff is a 50-year-old African American female who diligently worked for Defendant for nearly 20 years beginning September 17, 2004, as a Psychologist III. Plaintiff's job title was later changed to a Psych MHP II in 2023. Plaintiff tirelessly advocated mental health care and trauma-related care to youthful offenders to

promote rehabilitation, prevention, and intervention for at-risk youth in South Carolina. The Plaintiff continuously worked to impact and transform the lives of youth offenders to become successful and productive citizens and support their families to create safer communities throughout the state of South Carolina.

6. Plaintiff always prides herself on being an exemplary employee and has never received disciplinary action regarding her performance or interactions with her co-workers, supervisor(s), or previous department heads. Plaintiff's diligent efforts in working for Defendant brings her two years away from retirement.

7. Plaintiff requested reasonable accommodations that Defendant had granted her until July 6, 2023. Her reasonable accommodations consisted of 1. Respiratory breathing issues which limited her activities to include walking extensively 2. The Plaintiff should have limited exposure to heightened/chaotic situations that could potentially elevate her heart rate. 3. The Plaintiff should avoid locations where a potentially dangerous situation could erupt. 4. The Plaintiff was prescribed medications that had potential side effects and symptoms for her cardiac condition. Therefore, Plaintiff would need to have breaks throughout the day, limit her walking, and only perform work duties during the daytime hours.

8. Defendant Brown, who assumes supervisory oversight of Plaintiff, engaged in a pattern of retaliation and creation of a hostile work environment directed towards Plaintiff by questioning **why Plaintiff was not being placed on call like other similarly situated staff members. Defendant Brown knew or should have known of Plaintiff's accommodations and the fact that Plaintiff had never been on call since being granted her accommodations. Defendant Brown recklessly sought to**

**circumvent her long-standing accommodations by questioning Plaintiff's accommodations and why she could not be placed on call.**

9. Because of Defendant Brown's consistent harassment of Plaintiff about not being on call, Plaintiff received an email from Mylene Virata on March 4, 2024, that was sent to her immediate supervisor, Anthony Roundtree, and Ernest Brown Associate Deputy of Clinical Services. The email, which included Jessica Abney, required a current update on Plaintiff's medical condition and accommodations. The last update on file was June 3, 2022.

10. Defendants informed Plaintiff that the required note was needed by March 18, 2024, and that the note needed to be CC'd to Jessica Abney as well.

11. Plaintiff voiced concerns about the reasoning behind the need for an update and suspected Defendant was working against her interests as she told Ms. Virata that her condition was stable, and the current accommodations until July 6, 2023, were suitable for her to perform her job. Plaintiff's concerns were not well received by the Agency.

12. Ms. Virata informed Plaintiff, through Defendant Brown's guidance, that there was a possibility her position as Psych MHP II not be provided to her due to her inability to perform and fulfill her work duties. This was pretextual and done for the express purpose of trying to remove Plaintiff from her job, as Defendant Brown and others were driving the move to void Plaintiff's accommodations by trying to place her on call or remove her from the position of Psych MHP II.

13. Ms. Virata vehemently told the Plaintiff that the agency had two possible choices: to put the Plaintiff in a position making the same or less salary or be discharged from the

agency. This left Plaintiff shocked and dismayed as there had been no prior instances regarding her inability to perform her job with the accommodations as a Psych MHP II.

14. Upon information that she could be demoted or administratively separated from her position as a Psych MHP II, Plaintiff asked her cardiologist on March 15, 2024, at 12:28 p.m. if her accommodations could be altered so that she could prevent the termination of her job.

15. Plaintiff in an effort to stop the possibility of a demotion or involuntary termination, specifically asked her cardiologist if the following accommodations could be removed based on her opinion: 1. The Plaintiff should have limited exposure to heightened/chaotic situations that could potentially elevate her heart rate. And 2. The Plaintiff should avoid locations where potentially dangerous situations could erupt. The Plaintiff's cardiologist amiably agreed to remove those accommodations on March 11, 2024.

16. To further stop the possibility of a demotion or involuntary termination, on March 21, 2024, Plaintiff informed Mylene Virata and Jessica Abney that the Advanced Heart Failure Clinic was working on her new letter of accommodations. The Plaintiff informed Ms. Virata that the doctor's office could not provide an update until the following week due to a staff member's illness.

17. On March 28, 2024, Plaintiff still in an effort to keep her accommodations, sent an email with the appropriate forms and documentation for her medical accommodations to HR. The Plaintiff out of concern for her privacy, asked if the attached forms from her medical records would be seen by anyone outside of HR. The Defendant assured

her that they would not. This commitment to privacy confidentiality and Plaintiff's reliance on the Agency Handbook Policy on Medical Confidentiality was relied upon by Plaintiff but not fulfilled due to a breach of confidentiality by Defendant. Defendant's recklessness and breach of contractual commitment became manifest on April 3, 2024, when Plaintiff received an email that the doctor submitted a medical note diagnosing Plaintiff's condition even further with specificity regarding her medical history was shared with other staff, not privity to such documentation.

18. This breach occurred in an email that was sent as a Reply All message to a previous email thread by Erica Oliver, Jessica Abney, and Mylene Virata but additional names were also added to this email including CC'd to: her direct supervisor Anthony Roundtree, Benefits, Defendant Ernest Brown, Felicia McGhee, and Anthony Nelson. None of these people, except for Anthony Roundtree, were in her supervisory chain or needed access to her confidential information. This was a direct violation of Plaintiff's medical history and privacy rights.

19. On April 3, 2024, at 4:31 p.m., Plaintiff asked Defendant Oliver why the other names were added in the email concerning her accommodations since they were not her supervisors. Defendant Oliver responded that "those recipients were added to her original email that she sent because Dr. Brown's automatic reply had their names listed to contact upon his return to the office." Dr. Brown's automatic reply by Oliver shared this information to persons, not privity to have the medical history of Plaintiff. This explanation totally contradicted the earlier promise by Oliver and the Agency Policy Handbook on Medical Confidentiality.

20. On April 3, 2024, at 9:21 p.m., Plaintiff sent an additional email to Ms. Oliver and CC''d Anthony Roundtree, Mylene Virata, and Jessica Abney firmly expressing that the other named employees in the email are not and have never been her supervisors or in the chain of her supervision. She also decisively communicated to Defendant Oliver that the Defendants' knowledge of her medical accommodations was her personal information and was a gross HIPAA violation on HR's part. She further stated she would have the appropriate letter from her doctor for HR soon.

21. Sadly, on April 4, 2024, at 9:03 a.m., Plaintiff received an email from Defendant Oliver stating that HR would await her medical note but completely disregarded the HIPAA violation done to Ms. Jones and acted as if Plaintiff never brought up this topic in the previous email. In fact, Defendant acted with total defiance and indifference to Plaintiff's concerns about the HIPAA violation.

22. Shortly thereafter, Plaintiff visited her doctor on April 4, 2024, visibly upset showing signs of distress and anxiety due to the violation of her privacy rights. The Plaintiff's PCP became extremely concerned about the Plaintiff's health and well-being. The stress she incurred due to Defendant's grossly negligent privacy violation and violation of the Agency Handbook on Confidentiality against Plaintiff was extreme and resulted in severe emotional distress.

23. As a result of Defendant Oliver's reckless disregard for Plaintiff's concerns for her medical privacy rights, Plaintiff sent a detailed email to the Director of HR, Mr. DeWarren Register, on April 8, 2024, at 6:11 p.m., outlining her concerns regarding the blatant HIPAA violation committed by the Defendants, however, Plaintiff did not receive a response until May 23, 2024, at 11:03 p.m.

24. Mr. Register apologized for the late response and assured Plaintiff that he was looking into her complaint and that he was available the following week to discuss the matter further. To Plaintiff's dismay, no one, including Mr. Register, ever reached out to Plaintiff again concerning this matter.

25. Due to the Defendant's gross negligence and her concern that others (co-workers and non-related workers in the Benefits Department) knew about her medical information and could disclose this information with other co-workers, Plaintiff has been having difficulty sleeping, increased heart rate, and increased anxiety.

FIRST CAUSE OF ACTION

*Discrimination and Retaliation in Violation of The Americans with Disabilities of 1990 as to Defendants South Carolina Department of Juvenile Justice, Erica Oliver-Benefits Specialist, and Ernest Brown-Associate Deputy of Clinical Services.*

26. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

27. Plaintiff has a good faith belief that her reasonable accommodations, which were accessed and documented by her licensed physician, was a protected activity and was a legitimate need for her to perform her duties effectively on her job was violated by Defendant's gross negligence in disseminating Plaintiff's medical information to no less than four non-supervisory staff.

28. On information and belief, Plaintiff contends that Defendant Ernest Brown discriminated against her due to her disability under The Americans with Disabilities of 1990. Plaintiff further contends that after she raised concerns about Defendant's requests of March 4, 2024, regarding her medical conditions, Brown retaliated against

her and created a hostile work environment based on her disability by trying to void the accommodations on July 6, 2023, to try and put Plaintiff to go on-call status. Brown was not successful in his attempts but held animus against Plaintiff and sought to demote her or attempt to make her quit. Plaintiff contends the Defendant agency condoned the actions of Brown to create an adverse punishment for Plaintiff due to her accommodations. The Defendant's conduct was pretextual and designed for the express purpose of retaliating against Plaintiff by stating that she could be demoted or terminated from her employment if she did not agree to the Agency's demands.

29. There is a clear and obvious causal connection between Plaintiff's reasonable accommodations being provided and the adverse action taken by the Defendants Brown and Oliver, acting in their official capacities, to seek demotion of Plaintiff or potentially terminate her position without cause or justification between March 4, 2024, and April 3, 2024. The Defendants' actions were a coordinated effort, designed for the purpose of retaliation due to Plaintiff's raising concerns regarding her protected reasonable accommodations.

30. Plaintiff asserts that the demands placed upon her to obtain new reasonable accommodations documentation were a pretext designed to violate her ADA status with a potential demotion or termination to force her to quit. Specifically, Defendants Brown and Oliver, in their official capacities, acted with a reckless disregard for her privacy all with the intent to create a hostile work environment based on a disability.

31. In failing to protect the Plaintiff's rights under The Americans with Disabilities Act of 1990, as amended, Defendants acted with malice/and or reckless indifference to try and not continue to provide her with reasonable accommodations to allow her to

remain in her job that had been provided to her for approximately twenty years of employment with the South Carolina Department of Juvenile Justice. Defendant Brown actively worked to undermine Plaintiff by trying to place her on an on-call status and his conduct was pervasive, hostile, and retaliatory towards Plaintiff.

32. Defendants purposefully violated The Americans with Disabilities Act of 1990 by not allowing Plaintiff equal access to all benefits and privileges of employment that are available to similarly situated employees without disabilities. They also violated Plaintiff's rights to privacy and confidentiality when discussing Plaintiff's accommodations outside the chain of command for the exact purpose of retaliation for Plaintiff's advocacy for protection under The Americans with Disabilities Act of 1990.

33. As a direct and proximate result of Defendant's gross negligence in maintaining Plaintiff's private medical information, Plaintiff has suffered from severe sleep deprivation, anxiety, and increased heart rate.

34. Plaintiff's employment discrimination has caused, continues to cause, and will cause Plaintiff to suffer physical and mental anguish, pain, suffering, loss of enjoyment of life, and other non-pecuniary losses.

35. The Plaintiff is entitled to injunctive relief and/or civil damages.

## SECOND CAUSE OF ACTION

*Breach of Contract as to Defendant South Carolina Department of Juvenile Justice*

36. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

37. Plaintiff and Defendant entered into a binding and legal contract for employment with the South Carolina Department of Juvenile Justice as a Psychologist III beginning on September 17, 2004. Plaintiff accepted the offer of employment and agreed to fulfill the duties of her positions in exchange for valuable consideration, her salary, and Defendant's guarantee that she would be protected from discrimination as well as having any medical documentation treated as confidential.

38. Plaintiff's new position was reclassified as a Psych MHP II worker as of 2023, for the South Carolina Department of Juvenile Justice which she currently still holds a position as such.

39. Defendant maintained an employment handbook and its mandatory policies and procedures to include Plaintiff's job description which set out conditions that Plaintiff performed regardless of her disability.

40. Plaintiff continuously and diligently worked for Defendant for approximately twenty years and had almost reached the age of retirement before the unlawful acts of Defendant.

41. At all times during her employment, Plaintiff relied on the promises contained in Defendant's handbook, policies and procedures, and governing documents.

42. Plaintiff received for her entire employment with South Carolina Juvenile Justice until July 6, 2023, the proper accommodations for her medical conditions.

43. Defendant breached its employment contract with Plaintiff between March 4, 2024, through April 3, 2024, and its policies and procedures by failing to protect Plaintiff from Discrimination based on a disability and violation of her medical privacy.

44. Defendants failed to provide Plaintiff with the necessary resources and accommodations to perform her occupational duties thoroughly. Instead, they retaliated against her by stating there was a possibility she could be demoted or "Administratively Separate" from her job duties that she held for approximately twenty years. Defendant's adverse action created undue stress and a hostile work environment based upon her disability forcing medical anxiety upon Plaintiff.

45. Defendants have unjustifiably failed to perform the employment contract with Plaintiff by offering Plaintiff a possible choice of possible demotion or termination without just cause or reasoning after reasonable accommodations issues surfaced in March 2024.

46. As a direct and proximate result of Defendant's breach of contract, Plaintiff has suffered from sleep deprivation, anxiety, increased heart rate, low self-esteem, and embarrassment.

47. Therefore, Plaintiff is entitled to injunctive relief and/or civil damages.

THIRD CAUSE OF ACTION

*Gross Negligence and Negligent Conduct in Violation of Health Insurance Portability Accountability Act of 1996 (HIPAA) as to Defendants Erica Oliver and Ernest Brown*

48. Plaintiff reiterates each and every allegation in the previous paragraphs as if set forth verbatim herein.

49. Defendants had a duty of care to act with reasonable care regarding Ms. Jones' privacy rights centered around her medical records and personal information concerning her reasonable accommodations, to avoid preventable harm to Ms. Jones' identity and livelihood. Defendants breached that duty on April 3, 2024.

50. Defendants had a duty to safeguard the confidentiality, integrity, and availability of Ms. Jones' personal health information (PHI) and to protect her PHI from unauthorized individuals and employees which Defendants failed grossly negligent conduct in disseminating her confidential information to non-privileged staff numbering no less than four staff members.

51. The Defendants had a duty to employ reasonable care and safety measures to prevent the unauthorized use or disclosure of Ms. Jones' PHI in email chains and correspondence. The exposure to the staff members not entitled to such information was reckless and gross negligence.

52. The Defendants had a duty to limit access to Ms. Jones' ePHI to only authorized individuals and staff members/personnel. Defendants failed horribly in carrying out this duty to Plaintiff.

53. Defendants had a duty to handle Ms. Jones' medical records and PHI with due care and not to delay notifications of a breach concerning her PHI.

54. Furthermore, without limitation, the Defendants had a duty to comply with all current federal and state laws concerning the care of medical information, rights to medical records and health information disclosures, and rights to who can receive medical records and health information, including, but not limited to The Health Insurance Portability and Accountability Act of 1996, Public Law 104-191 Sections 261-264, and any other local, state, and federal law and current professional organization standards.

55. Plaintiff asserts that the South Carolina Department of Juvenile Justice, Defendant Oliver, and Defendant Ernest Brown were on notice that some of the CC'd employees

in the email concerning her reasonable accommodations approval, were not authorized employees to have seen Ms. Jones' PHI through her April 3, 2024, email at 9:21 p.m.

56. Defendants knew that Ms. Jones' PHI disclosure was a possible HIPAA violation on April 3, 2024.

57. Despite the notice, Defendants failed to act with the necessary reasonable care for Ms. Jones' PHI. They were grossly negligent, reckless, willful and/or wanton in one or more of the following particulars:

   a. Failing to safeguard the confidentiality, integrity, and availability of Ms. Jones' PHI.

   b. Failing to handle Ms. Jones' PHI professionally and confidentially.

   c. Failing to limit Ms. Jones' PHI access to authorized individuals and personnel.

   d. In failing to prevent the unauthorized use or disclosure of Ms. Jones' PHI.

   e. In failing to notify the proper chain of command about the breach discovered concerning Ms. Jones' PHI though one employee, Defendant Erica Oliver, already knew and was responsible for such a breach.

58. The aforesaid acts were the actual and proximate cause of the Plaintiff's damages and injuries.

59. As a result of the aforesaid acts, Plaintiff experienced sleep deprivation, increased heart rate, increased anxiety, embarrassment, and low self-esteem.

60. As a direct result of the aforementioned negligence of Defendants' willful and wanton lack of reasonable care concerning the duty owed to Ms. Jones' PHI, Ms. Jones

suffered irreparable harm which resulted in stress, anxiety, sleep deprivation, increased heart rate, embarrassment, and low self-esteem.

PRAYER FOR RELIEF

**Wherefore**, the Plaintiffs pray for the following:

1. That Plaintiffs are granted all their claims.

2. That Defendants are denied all counterclaims and defenses.

3. For Attorney's fees and cost to prosecute this action

4. For a Jury Trial.

5. For actual, special, consequential, and punitive damages.

6. For such and other awards as this Honorable Court deems just and proper.

Respectfully Submitted,

s/Donald Gist_____
Donald Gist (13098)
GIST LAW FIRM, P.A. 4400 North Main Street
Columbia, South Carolina 29203
Tel. (803) 771-8007
Fax (803) 771-0063
Email: dtommygist@yahoo.com

Attorney for Plaintiff

June 20, 2024